**COLONIAL REALTY CORPORATION**

v.

**BALDWIN–MONTROSE CHEMICAL CO. et al.**

**Civ. A. No. 68–991.**

United States District Court,
E. D. Pennsylvania.
April 15, 1970.

Harold E. Kohn, Bruce W. Kauffman, Philadelphia, Pa., for plaintiff.

David Berger, Herbert B. Newberg, Charles I. Thompson, Jr., Arthur H. Kahn, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION

WEINER, District Judge.

The above-captioned action was brought as a class action on behalf of the plaintiff and all other shareholders of Chris-Craft Industries, Inc. ("Chris-Craft") alleging violations of Section 10 (b) of the Securities Exchange Act of 1934 and Rule 10b–5 adopted thereunder; a claim under Section 14(a) of the Act and Rule 14(a)–9 thereunder; an allegation of breach of fiduciary duties by defendants and finally a claim under 42 U.S.C. § 1983 and 28 U.S.C. § 1343. For the purposes of this opinion, we believe that it will serve no useful purpose to set out in detail the exact language of the Acts which will control the outcome of this case, because, when all of the charges are reduced to their common denominator, the ultimate question to be determined will relate to the truthfulness and accuracy of a proxy statement submitted to the shareholders of Chris-Craft.

The relevant facts that emerge as a result of our examination of the complaint depositions and affidavits establish that Baldwin-Montrose began purchasing shares of Chris-Craft on the open market in 1966. By the end of March 1967 it had acquired approximately 378,000 shares which constituted 20% of Chris-Craft shareholders shares. Thereafter, 150,000 additional shares were purchased thereby increasing its holdings from slightly more than 25% to approximately 35% of the outstanding shares of Chris-Craft. Prior to obtaining the additional shares, Baldwin-Montrose filed an application with the Securities and Exchange Commission for an exemption under Section 3(b) (2) of the Investment Company Act of 1940, for an order finding that Baldwin-Montrose was not an investment company and declaring that it was primarily engaged in a business other than that of investing, reinvesting, owning, holding or trading in securities. In this application the following statement appears:

" * * * The closing under the agreement will bring the Company's holdings from slightly more than 25% to approximately 35% of the outstanding shares of Chris-Craft. No other individual or group to the knowledge of the Company owns as much as 5% of the outstanding common stock and the Company believes it will clearly have working control of Chris-Craft".

The exemption was granted and the shares purchased. Fifteen days after the consummation of Baldwin-Montrose's purchase of said 150,000 shares of Chris-Craft common stock a special meeting of the Chris-Craft Board of Directors was held. At that meeting the resignation of five former directors of Chris-Craft was accepted. New directors were elected so that the Board then consisted of the five remaining members of the Board and five directors of Baldwin-Montrose who

then became directors of Chris-Craft. The Board then discussed and considered the proposed merger of Baldwin-Montrose into Chris-Craft. With the newly elected directors abstaining, the other directors voted in favor of the adoption of a resolution declaring that a merger would be in the best interests of Chris-Craft and Baldwin-Montrose, and appointed Lehman Brothers to determine and report to the Board what would be fair and equitable for the Chris-Craft shareholders to receive if Chris-Craft were to merge with Baldwin-Montrose. A similar meeting was held by the Baldwin-Montrose Board at which time a merger was found to be in its best interests and Loeb Rhoades & Co. was appointed to make a determination of fairness for the benefit of the Baldwin-Montrose shareholders. Lehman Brothers and Loeb Rhoades presented their written reports expressing opinions that the plan of the proposed merger would be fair and equitable. Subsequently a meeting of the Board of Directors of Chris-Craft and Baldwin-Montrose was held and both boards authorized the issuance of a joint proxy to be mailed to the shareholders, who, thereafter, approved the merger.

The main prong of plaintiff's attack on the validity of the merger centers around that part of the proxy which stated:

"Each Board approved the Plan and Agreement of Merger by unanimous vote of the directors, Messrs. Herbert J. Siegel, James J. Rochlis, C. Leonard Gordon, Lawrence R. Barnett and David Linowes, directors of Baldwin-Montrose have been directors of Chris-Craft, in the case of Messrs. Siegel and Rochlis, since April 1967, and, in the case of Messrs. Gordon, Barnett and Linowes, since December 1967. Accordingly, the entire Board of Baldwin-Montrose comprises five of the ten directors of Chris-Craft. Baldwin-Montrose owns approximately 34% of the outstanding Common Stock of Chris-Craft".

"In connection with the merger, the Board of Directors of Baldwin-Montrose selected the investment banking firm of Loeb Rhoades & Co. to consult with it and the Board of Directors of Chris-Craft selected the investment banking of Lehman Brothers to consult with it. Each firm considered the merger and the kind and amount of stock of the surviving corporation * * *. Loeb Rhoades and Company advised Baldwin-Montrose and Lehman Brothers advised Chris-Craft that the proposed terms of the merger were fair and equitable to their respective shareholders * * *."

"Baldwin-Montrose acquired its holdings of Chris-Craft in a series of purchases commencing in 1966. Prior to December, 1967, Baldwin-Montrose, from time to time, in market transactions, purchased an aggregate of 437,000 shares. In December 1967, Baldwin-Montrose purchased an additional 150,000 shares * * *"

Plaintiff argues that the defendants issued a proxy statement prior to the merger which was materially false and misleading. See, J. I. Case v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1963). Basic to this thesis is the accusation that the proxy failed to advise the shareholders of Chris-Craft that, the closing under the agreement for the purchase of 150,000 shares raised the Baldwin-Montrose Company's holding from slightly more than 25% to approximately 35% of the outstanding shares of Chris-Craft. That no other individual or group to the knowledge of the Company owns as much as 5% of the outstanding stock and the Company believes it will clearly have working control of Chris-Craft. Relying upon the aforesaid, the plaintiff urges that it is entitled to summary judgment as a matter of law. The defendants sharply disagree and have countered with a motion to dismiss the complaint or in the alternative to transfer this action to the Southern District of New York.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Rule 14(a)–9 (supra) provides in relevant part:

"(a) No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading * * * "

Initially, we will accept the plaintiff's argument that an exchange of stock in a merger falls within the protective ambit of the pertinent Rules of the 1934 Act, supra, Securities and Exchange Commission v. National Securities, Inc., 393 U.S. 453, 467–469, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969); Mader v. Armel, 402 F.2d 158, 160–161 (6th Cir. 1968), as well as Section 14(a) and Rule 14(a)–9; Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); J. I. Case v. Borak, supra. We are also of the opinion that a stockholder who alleges damage as a result of a deceptive proxy solicitation has the right to seek relief in a federal court. This conclusion is compelled by the Supreme Court's decision in J. I. Case v. Borak, 377 U.S. at 427, 84 S.Ct. at 1560, where it was observed:

"The injury which a stockholder suffers from corporate action pursuant to a deceptive proxy solicitation ordinarily flows from the damage done the corporation, rather than from the damage inflicted directly upon the stockholder. The damage suffered results not from the deceit practiced on him alone but rather from the deceit practiced on the stockholders as a group. To hold that derivative actions are not within the sweep of the section would therefore be tantamount to a denial of private relief". See, Swanson v. American Consumer Industries Inc., 415 F.2d 1326, 1328, 1332–1333 (7th Cir. 1969).

Thus, we now reach the threshold question in this case and that is whether, as a matter of law, predicated upon the present state of the record, we can authoritatively determine that there was a legal obligation upon Baldwin-Montrose to have disclosed in its proxy, its belief that its acquisition of the stock of Chris-Craft gave it working control of Chris-Craft.

Under Rule 56 of the Federal Rules of Civil Procedure, upon a motion for summary judgment, this Court is directed to render judgment.

" * * * If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* * * *."

(emphasis supplied).

The fact that the joint proxy failed to state that Baldwin-Montrose believed it had clearly obtained working control of Chris-Craft is not disputed. In considering the materiality of the omission we are precluded from looking to the fairness of the merger terms for the test of materiality is whether the omission was of such a character that it might have been considered important by a reasonable shareholder who was in the process of deciding how to vote. Mills v. Electric Auto-Lite, 396 U.S. at 384, 90 S.Ct. 616. Since Baldwin-Montrose owned approximately 35% of Chris-Craft common stock, it is self evident that the vote of the holders of the balance of the stock was required for the adoption of the merger by the shareholders of Chris-Craft.

It is our conclusion that the joint proxy contravened SEC Rule 14(a)–9 in that it omitted to state a material fact necessary in order to make the statements therein not false or misleading. Mills v. Electric Auto-Lite, 396 U.S. at 383, 90 S.Ct. 616. We further

conclude that the defect was of such a character that it might have been considered important by a reasonable shareholder who was in the process of deciding how to vote. We also believe that the plaintiff has made a sufficient showing of causal relationship between the violation and the injury for which it seeks redress. In light of this disposition we deem it advisable to hold in abeyance the remaining motions which will be encompassed in our order. However, we are of the opinion that there exists a controlling question of law as to which there is substantial ground for difference of opinion. We recognize that if the Court of Appeals should come to a contrary conclusion, that would result in finality and make an end to this case. We also will not undertake, at this posture of the case, the matter of relief until such time as our opinion is either affirmed or reversed.

### ORDER

1. The motion of the plaintiff for summary judgment on the issue of liability under Section 10(b) and 14(a) of the Securities Exchange Act of 1934 is granted.

2. The plaintiff's request for an award of its interim costs and expenses, including reasonable attorney's fees will be held in abeyance.

3. The motion of the defendants to dismiss the complaint for lack of jurisdiction and improper venue and service, or, in the alternative, to transfer this action to the Southern District of New York will also be held in abeyance.

Further, it is the opinion of this Court that this order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate determination of this litigation; this certification being made pursuant to the provisions of Title 28 U.S.C. § 1292(b).

It is so ordered.