**Rita GANS and Bernard Gans, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**FILMWAYS, INC., Bloch, Richard L., Nolan, L. Douglas, Grunburg, Robert A., Feldman, Edward S., Schier, Walter C., Roth, Harold, Manheimer, Lawrence H., Katz, Jack J., Pitt, Donald, di Scipio, Alfred, Union Fidelity Corporation, Dozor, Harry T., Cooney, John M., Harmon, James A., Richardson, James A., Rattner, Marshall R. and Cimino, Louis F., Defendants.**

Civ. A. No. 78–614.

United States District Court, E. D. Pennsylvania.

June 26, 1978.

**1118**

Fine, Kaplan & Black, Aaron M. Fine, Philadelphia, Pa., for plaintiffs.

Richard D. Greenfield, P. C., Sterling H. Schoen, Jr., Robert P. Frutkin, Bala Cynwyd, Pa., for James Richardson.

David H. Pittinsky, Philadelphia, Pa., for defendants Filmways, Inc., Bloch, Nolan, Grunburg, Feldman, Schier, Roth, Manheimer, Katz, Pitt and Di Scipio.

Stuart H. Savett, Philadelphia, Pa., for Union Fidelity.

Matthew J. Broderick, Philadelphia, Pa. for defendants Dozor, Cooney, Harmon, Rattner and Cimino.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

This case arises out of the merger of defendant Union Fidelity Corporation (Union) and defendant Filmways, Inc. (Filmways). Count I of the two count amended complaint charges that the joint proxy statement prepared by the defendants to solicit shareholder approval of the merger violated Section 14(a) of the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C. § 78n(a), and Rule 14a–9, 17 C.F.R. § 240.14a–9, promulgated thereunder. Count II charges the defendants with having breached certain common law fiduciary duties owed to plaintiffs and other minority shareholders of Union. The jurisdiction of this court is invoked pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and the principles of pendent jurisdiction.

The defendants have filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In connection with that motion defendants have filed, *inter alia,* a copy of the proxy statement in question. Since I have not excluded consideration of the proxy I must treat this motion as one for summary judgment. Fed.R.Civ.P. 12(b). *See Prettner v. Aston,* 339 F.Supp. 273 (D.Del.1972). Accordingly, I must decide whether there is a "genuine issue as to any material fact" which would preclude entry of judgment against the plaintiffs. Fed.R.Civ.P. 56. *See Kubik v. Goldfield,* 479 F.2d 472 (3rd Cir. 1973).

Plaintiffs in this case were shareholders of defendant Union prior to the merger of Union and Filmways. Under the terms of the merger holders of Union common stock would be entitled to receive 1.18 shares of Filmways common stock in exchange for each of their shares of Union stock. Defendants are Union, a Pennsylvania Insurance holding company, Filmways, a diversified Delaware corporation, and the mem-

bers of their boards of directors. At the time of the issuance of the joint proxy statement Filmways owned approximately 62% of Union common stock. On February 3, 1978, meetings of the shareholders of Union and Filmways were held simultaneously and the merger was approved. Thereafter the plaintiffs filed this suit, which is now limited to a claim for damages, seeking to represent a class consisting of "all owners of Union's common stock, other than defendants, as of the close of business on December 28, 1977, who were entitled to vote at the special meeting of the stockholders of Union on February 3, 1978, with respect to the merger whereby Union became a wholly owned subsidiary of Filmways."

The substance of plaintiffs' allegations in Count I of the complaint is that the proxy statement issued in connection with the merger was misleading because it omitted to state material facts in violation of Section 14(a) of the Exchange Act and Rule 14(a)–9 promulgated thereunder. Section 14(a) of the Exchange Act provides:

"It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title."

Rule 14a–9, 17 C.F.R. § 240.14a–9, promulgated by the Securities and Exchange Commission, provides:

"(a) No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, *is false or misleading with respect to any material*

*fact,* or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

"(b) The fact that a proxy statement, form of proxy or other soliciting material has been filed with or examined by the Commission shall not be deemed a finding by the Commission that such material is accurate or complete or not false or misleading, or that the Commission has passed upon the merits of or approved any statement contained therein or any matter to be acted upon by security holders. No representation contrary to the foregoing shall be made."

Defendants in their motion assert that the alleged omissions are not material, and therefore, because materiality is an essential element of a § 14(a) cause of action, the case should not proceed to trial. Materiality is a mixed question of law and fact and as such is not usually an appropriate issue for resolution by summary judgment. *Gould v. American-Hawaiian S. S. Co.,* 535 F.2d 761 (3rd Cir. 1976). On the other hand it has been recognized that summary disposition of materiality questions is proper under certain circumstances.

[I]f the facts falsified, misrepresented or withheld are so obviously important to the shareholder's decision that reasonable minds cannot differ on the question of materiality and the underlying facts and the inferences to be drawn from those facts are free from controversy, the question becomes one of law which may appropriately be decided by summary judgment.

*Id.* at 771 citing *Johns Hopkins University v. Hutton,* 422 F.2d 1124, 1129 (4th Cir. 1970) *cert. denied* 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974). I will, therefore, examine each of plaintiffs' contentions to determine whether there can be a reasonable difference of opinion on materiality.

■ The applicable standard for determining materiality was expressed by the United States Supreme Court in *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). The court stated:

An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. This standard . . . does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.

*Id.* at 449, 96 S.Ct. at 2132. In applying this standard I am guided by the principle that full and accurate disclosure is the foundation of federal securities regulation. Nevertheless, "reasonable latitude in this area is important if nit-picking is not to become the name of the game." *Kohn v. American Metal Climax, Inc.,* 458 F.2d 255 (3rd Cir. 1972).

The first allegation of an omission appears in paragraph 25 of the amended complaint where it is stated that the economic terms of the merger were unfair to Union stockholders, "since, . . . as the defendants knew or should have known, insurance companies in general are being acquired for premiums in excess of book value . . . ." It is alleged that this was a material fact which should have been included since the exchange ratio in this merger was below the book value of Union stock.

■ Initially I must note that the fairness or unfairness of the merger exchange ratio is not at issue in the § 14(a) claim. The purpose of § 14(a) is to adequately inform shareholders so that *they* may make a rational determination on whether to support or oppose a particular transaction. As the court stated in *Colonial Realty Corp. v. Baldwin-Montrose Chemical Co.,* 312 F.Supp. 1296 (E.D.Pa.1970), "In considering the materiality of the omission we are precluded from looking to the fairness of the merger terms . . . ." *Id.* at 1299. Therefore, I must focus on whether the failure to state in the proxy that other insurance companies were acquired for premiums in excess of their book value was a material omission, not whether the merger terms were fair.

■ I find as a matter of law that that fact cannot be deemed material in connection with this merger. First of all, insurance companies are not fungible entities and the value of one company is not a reliable indication of the value of another. Secondly, and perhaps more importantly, the notion of book value is of little if any help in determining the actual value of a share of stock.[1] As Chief Judge Lord of this district has noted, the "suggestion that book value is any indication of the real value of shares of stock has long been discredited, and should not have been resurrected for the purposes of this proxy solicitation." *Allen v. Penn Central Company,* 350 F.Supp. 697, 704 (E.D.Pa.1972) *citing Borg v. International Silver Co.,* 11 F.2d 147, 152 (2d Cir. 1925) (Hand, J.). Because book value has no relation to real value, it is indisputable that a *reasonable* investor would not consider the ratio of book value to exchange rate in other sales of insurance companies of any importance in deciding how to vote on this particular merger.

The plaintiffs claim that the sales of other insurance companies at prices in excess of book value establishes that there was a "market for insurance companies in which a premium in excess of book value could be realized." I do not find this argument persuasive, however, since there is no allegation or indication that there was an individual or group, except for Filmways, willing to purchase Union at any price let alone at

---

1. The plaintiffs have not alleged that the proxy was deficient in stating what were the respective book values of Union and Filmways stock, and in fact this data was clearly disclosed. *See* Joint Proxy Statement pp. 10 & 11.

a price in excess of book value.[2] The omission of the statement alleged in paragraph 25 is, therefore, not only immaterial, its inclusion would have been misleading if it gave the impression that there existed available purchasers willing to pay a price in excess of book value.

■ The next category of alleged deficiencies in the proxy statement concerns the ability of minority Union stockholders to successfully oppose the merger. Paragraphs 26 through 30 of the complaint allege:

"26. The joint proxy statement and·its summary set forth, among other matters, that approval of the agreement and plan of reorganization required the affirmative vote of the holders of a majority of the outstanding Union common stock, that Filmways intended to vote its shares in favor of the merger, and that in view of its ownership of approximately 62% of Union common stock, the vote of a majority of the Union stockholders necessary to approve the merger was assured.

"27. The joint proxy statement and its summary also set forth that holders· of Union common stock would have no dissenters' right in connection with the merger.

"28. The joint proxy statement further purported to set forth the rights, of Union's stockholders under the applicable laws, including the laws of Pennsylvania, the state of its incorporation.

"29. The statements alleged in paragraphs 26, 27 and 28 falsely gave the impression that the public stockholders of Union had no recourse to challenge the fairness of the merger and that any opposition to the merger was doomed to defeat.

"30. At the same time, the joint proxy statement omitted any reference to the fact that Filmways, as the majority stockholder of Union, owed a fiduciary duty to the public stockholders and failed to inform them that they could challenge the fairness of the merger in a court of equity."

The apparent thrust of these allegations is an assertion that the proxy statement gave the "impression" that the consummation of the merger was a foregone conclusion and that minority shareholders of Union were without power to do anything about it. The failure of the proxy to inform the stockholders that they could challenge the terms of the merger in state court, it is alleged, was a material omission making the proxy misleading in this regard. I cannot agree. Section 14(a) mandates only that the material facts of a transaction be disclosed. It does not require that the proxy contain a statement of suggested strategy for those wishing to oppose the transaction. See *Ash v. LFE Corporation*, 525 F.2d 215, 219–220 (3rd Cir. 1975).

■ Paragraph 31 of the amended complaint charges that the proxy was deficient in not disclosing to Union stockholders the absence from the negotiation of the terms of the merger of persons acting independently on their behalf and also failed to adequately disclose all the benefits Filmways would obtain from the merger. I find, however, that the proxy did inform the stockholders of the identity and interests of the persons involved in the negotiations and that the resulting benefits to Filmways were adequately disclosed. In other words, there was no omission of a material fact with regard to these matters.

The allegation concerning the absence of independent negotiators on behalf of Union stockholders is an apparent reference to the fact that Filmways' position as majority stockholder of Union enabled it to elect the entire board of directors of Union. I agree with the plaintiffs that this was a significant fact and would be important to a reasonable investor. Contrary to the allegation of the complaint, however, this fact was clearly disclosed. Joint Proxy Statement pp. ii and 4. A statement going further than describing the potential conflict of interest of the Union directors is not required.

---

2. Although not determinative, it is significant that the actual market price for Union stock was well below book value. *See* Joint Proxy Statement p. 13.

The charge that the proxy did not adequately disclose the benefits to Filmways without further elaboration would be "so vague as to defy analysis." *Goldberger v. Baker*, 442 F.Supp. 659, 667 (S.D.N.Y.1977). See Fed.R.Civ.P. 9(b). It does not seem to me consonant with notions of fair play and justice to subject defendants to costly and time consuming litigation on the basis of an allegation that benefits were not adequately disclosed without specifying at least in general terms what benefits were not disclosed. The substance of plaintiffs' complaint on this point is, however, revealed in the plaintiffs' briefs submitted in opposition to defendants' motion. I need not, therefore, decide what degree of specificity is required in a complaint of this nature, since I will treat the allegations in the briefs as if they were contained in the complaint.

What those allegations amount to is a charge that the proxy did not fully disclose the amount of liquid assets that would become available to Filmways as a result of the merger. I agree that the availability of this surplus would be an important benefit to Filmways and the stockholders were entitled to know about it before voting. *Feit v. Leasco Data Processing Equipment Corp.*, 332 F.Supp. 544 (E.D.N.Y.1971). Again, however, I must conclude that this fact was adequately disclosed. The plaintiffs assert that approximately $13 million in liquid or near-liquid assets would become available to Filmways as a result of the merger. The proxy statement disclosed that Filmways at that time intended to use $7 million of liquid assets to reduce its debt and that other non-insurance assets of Union might be liquidated to reduce the $25 million debt by as much as one-half. See Joint Proxy Statement pp. ii and 5. Obviously this statement is sufficient to inform stockholders that at least $12.5 million dollars in liquid or near-liquid assets would be available to Filmways after the merger. Taking my cue from the court of appeals for this circuit I will "decline to hold that those responsible for the preparation of proxy solicitations must assume that stockholders cannot perform simple subtraction." *Ash v. LFE Corporation*, 525 F.2d 215, 219 (3rd Cir. 1975).

■ The final omission alleged in the complaint is contained in paragraph 32. The plaintiffs claim that the proxy should have informed stockholders that the merger had been approved by the Pennsylvania Insurance Commissioner without prior notice to the stockholders. Significantly, it is not alleged that Pennsylvania law requires that prior notice be given to stockholders, and in fact there is no such requirement. Pa.Stat. Ann. tit. 40 § 459.6 (Purdon). I cannot conceive what relevance the failure to notify stockholders of the submission of the merger plan to the Pennsylvania Insurance Commissioner could have on the merits of the plan. I, therefore, find that alleged omission is immaterial as a matter of law.

Plaintiffs have argued that the failure to mention the approval of the Pennsylvania Insurance Commissioner in the proxy deprived stockholders of an opportunity to protest the fairness of the merger before the Commissioner. I do not believe that the plaintiffs could establish such an effect, but in any event, as I have stated elsewhere in this opinion, the federal securities laws require only factual disclosure and do not require a proxy solicitation to include suggestions of strategy for those wishing to oppose a transaction.

■ In addition to the charges made in the complaint, plaintiffs in their brief in opposition to this motion have presented an additional alleged material omission. In the interest of judicial economy and mindful of the dictates of Federal Rule of Civil Procedure 15(a), I will consider this allegation as if incorporated in plaintiffs' amended complaint.

The gravamen of this allegation is that the proxy statement did not disclose prior relationships between certain defendants and Dean Witter & Co., a predecessor to Dean Witter Reynolds, Inc. (Reynolds). The proxy stated that Reynolds had given its opinion as an investment banking firm that the economic terms of the merger agreement were fair to Union stockholders. A copy of the opinion letter was attached to

the proxy. It is contended by plaintiffs and undisputed by defendants that defendant Harry T. Dozor, a Union director, and several Union subsidiaries maintained brokerage accounts with Dean Witter & Co. It is asserted that the existence of these accounts created a conflict of interest and prevented Reynolds from giving an unbiased evaluation of the transaction. I have concluded that the suggested conflict is more illusory than real, and therefore find that this omission is immaterial as a matter of law.

It is conceded by the plaintiffs that the favorable opinion letter contained and referred to in the proxy statement was prepared by Reynolds Securities, Inc. After the preparation of the opinion letter, but before the distribution of the proxy statement, Dean Witter & Co. merged with Reynolds Securities, Inc. to form Dean Witter Reynolds, Inc. The opinion letter, therefore, while submitted under the name of Dean Witter Reynolds, Inc. was actually prepared by Reynolds Securities, Inc. There is no allegation of any prior relation between any of the defendants and Reynolds Securities, Inc. and since Dean Witter & Co. did not prepare the opinion letter any connection between the defendants and that firm would be irrelevant. The materiality of the defendants' accounts with Dean Witter & Co., if any, would stem from a potential conflict of interest in opining favorably on the merger terms. Because the favorable opinion was arrived at by a firm having no undisclosed relation with the defendants there was no undisclosed potential for a conflict of interest and the alleged omissions cannot be deemed material.

In conclusion, I have found from the undisputed facts on this record that all the facts alleged to have been omitted from the joint proxy statement in this case are either immaterial as a matter of law or have been fully and fairly disclosed. The most that has been alleged under Count I of the complaint is a breach of fiduciary duty on the part of Union directors for entering into the merger to the alleged detriment of minority stockholders. Such a breach does not state a claim under section 14(a) of the Exchange Act. *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir. 1977) *citing Green v. Santa Fe Industries, Inc.*, 430 U.S. 954, 97 S.Ct. 1597, 51 L.Ed.2d 803 (1977). Accordingly, I will grant summary judgment on Count I of the complaint in favor of the defendants.

 Count II of the complaint is based on alleged violations of state law. Because I have granted summary judgment on Count I of the complaint I must refrain from exercising pendent jurisdiction over this claim "in the absence of extraordinary circumstances." *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 196 (3rd Cir. 1976). There appear to be no extraordinary circumstances in this case, and I will therefore dismiss Count II of the complaint.