199 A.2d 760 (1964)
Herbert BRAASCH et al., as trustees under the will of Harry William Voege, dec'd, Plaintiffs, and
Galdi Securities Corporation, Intervening Plaintiff,
v.
Carel GOLDSCHMIDT et al., Defendants.
Court of Chancery of Delaware, New Castle.
April 15, 1964.
*762 Aubrey B. Lank, of Theisen & Lank, Wilmington, for plaintiffs. Gustave B. Garfield and Reuben M. Siwek, New York City, of counsel.
Richard F. Corroon, of Berl, Potter & Anderson, Wilmington, for defendants. Willkie, Farr, Gallagher, Walton & Fitz-Gibbon, New York City, of counsel.
SHORT, Vice Chancellor.
This case is before the court on defendants' motion to dismiss for failure to state a claim on which relief can be granted.
Plaintiffs are the owners of 5400 shares of the common stock of American Sumatra Tobacco Corporation, (American Sumatra) a Delaware corporation. They here sue (1) individually on their own behalf; (2) representatively on behalf of all other stockholders of the corporation similarly situated, including those who sold their shares to the defendant N. V. Deli Maatschappij (Deli), a corporation of the Kingdom of the Netherlands, pursuant to an offer to buy made to all common stockholders; and (3) derivatively on behalf of American Sumatra.
On June 28, 1960, Deli was the owner of more than fifty per cent of the common stock of American Sumatra. On that date it made an offer to all other stockholders to buy 202,338 shares of the common stock of American Sumatra at $17 per share. The offer resulted in Deli acquiring in excess of 200,000 additional shares of American Sumatra and increasing its stock ownership to more than ninety per cent of the outstanding shares of the company. On October 21, 1960 Deli organized, as its wholly owned subsidiary, Tobacco Holdings, Inc., a Delaware corporation, and thereupon transferred to Tobacco Holdings, Inc. all its shares of American Sumatra. In November, 1960 American Sumatra was merged into Tobacco Holdings, Inc. pursuant to the provisions of 8 Del.C. § 253. Immediately thereafter, the name of Tobacco Holdings, Inc. was changed to American Sumatra Tobacco Corporation. The merger provided that holders of outstanding shares of American Sumatra would receive a payment of $17 per share in lieu of securities or other consideration.
Some of the plaintiffs are registered owners of stock of American Sumatra; some are registered owners and own in street name; some are owners in street name only. None of the plaintiffs tendered his shares pursuant to the offer to buy, or surrendered them upon the merger. Some plaintiffs have demanded an appraisal of the value of their shares and some have not. The appraisal action is now pending in this court as Civil Action No. 1445, Braasch v. American Sumatra Tobacco Corporation.
Defendants, the Imperial Agricultural Corporation, another wholly owned subsidiary of Deli, American Sumatra (the new company) and Deli have appeared in this action and have moved to dismiss. There are also certain nominal defendants over whom the Court has jurisdiction by virtue of personal service. Defendant American Sumatra Tobacco Corporation (the old company) has not appeared, though service of process was made upon its resident agent. Defendants Cramer, Goldschmidt, Frowein and Grobben, all directors of Deli, have not appeared.
The complaint alleges numerous acts of mismanagement and seizure of corporate opportunities. It also alleges that the merger of American Sumatra and Tobacco Holdings, Inc., resulted from a conspiracy of Deli and certain of the individual defendants to despoil American Sumatra and to *763 seize and hold, to the exclusion of the remaining stockholders, the assets of the corporation. The complaint asserts that Deli and certain of the individual defendants coerced the public stockholders into selling their shares pursuant to the offer to buy upon false, deceptive and misleading statements made in the public press and in official documents. Plaintiffs seek an order declaring the merger invalid and cancelling the same. They also seek an accounting to American Sumatra (the old company) for the transactions complained of, and payment and restoration to American Sumatra (the old company) of the amount of all losses and damages occasioned by these transactions. Appointment of a receiver for American Sumatra (the old company) and American Sumatra (the new company) is also prayed for.
The motion to dismiss is grounded upon contentions, (1) that plaintiffs are not adequate representatives of the class on whose behalf they purport to sue, (2) plaintiffs may not assert derivative claims in respect to any of the fraudulent transactions alleged in the complaint because American Sumatra (the old company) has no cause of action with respect thereto, and (3) plaintiffs' individual claims are not actionable since they did not tender their shares pursuant to the offer to buy. Defendants also defend the merger against charges in the complaint that under a proper interpretation of 8 Del. C. § 253 the merger is invalid.
Plaintiffs do not challenge the regularity of the merger proceedings. Neither do they claim that the statute, 8 Del.C. § 253, is unconstitutional as applied to Delaware corporations merging "for a beneficent purpose and without the hint of a fraudulent intent." The complaint alleges, however, that since the statute would not have permitted a merger of American Sumatra with Deli, an alien corporation, the attempted merger of American Sumatra with a wholly owned subsidiary of Deli is ineffective under the maxim that equity regards substance rather than form, and, more particularly, that one may not do indirectly what he is not permitted to do directly. I do not believe that the maxim relied upon has any application to the contention presented, unless, of course, a factual situation is presented which warrants the court to disregard the corporate fiction. The statute, by necessary implication, precludes mergers between domestic corporations and alien corporations, that is, those created under the laws of a foreign country. But that is not to say that a merger between Delaware corporations is prohibited where one of the corporations is a wholly owned subsidiary of an alien corporation. A subsidiary may be created by a domestic corporation for the purpose of effecting a merger. Hottenstein v. York Ice Machinery Corp., 136 F.2d 944. And the subsidiary is an entity distinct from its stockholders, even if its stock is wholly owned by another corporation. Buechner v. Farbenfabriken Bayer Aktiengesellschaft, Del.Ch., 154 A.2d 684. In the Buechner case a German corporation was the parent and a Canadian corporation the subsidiary. The Supreme Court held that a creditor of the parent corporation could not, in the absence of fraud, disregard the separate existence of the subsidiary. While the Court in Buechner was not considering the statute here involved, no good reason appears, and plaintiffs cite none, why a distinction should be drawn between cases generally and those arising under the merger statutes. There is nothing in the statute itself which discloses any intendment that its provisions are not available to a wholly owned subsidiary of an alien corporation. The only policy, expressed by implication, is that an alien corporation can not utilize the provisions of § 253 by itself merging with a Delaware corporation. Had the Legislature intended to take the further step which plaintiffs' allegation suggests, it would have been a simple matter to so provide. Moreover, the policy mentioned is obviously based upon practical problems which would otherwise arise. Difficulties of administration, problems of interpretation of the laws of *764 foreign countries and other practical considerations were undoubtedly in the legislative mind when § 253 was enacted. No such problems are presented when the merger is between two Delaware corporations, even though the stock of one is wholly owned by an alien corporation. I decline to predicate one inference upon another, as plaintiffs' contention would require. Since § 253 does not expressly except from its application wholly owned subsidiaries of alien corporations, the merger complained of was, in the absence of any showing of fraud, authorized by law.
But plaintiffs also say that for purposes of the present motion the allegations of fraud set forth in the complaint must be accepted as true, and that, therefore, the motion must be denied. Defendants argue that a merger may not be set aside for fraud unless the fraud complained of relates directly to the merger itself, which, they say, is not the case here. I do not believe that this controversy can be settled at this stage. The complaint charges, in effect if not expressly, that the merger was the final step of a conspiracy to accomplish an unlawful end by unlawful means. Though I have indicated that the end was not, in and by itself, unlawful, if the means employed to accomplish that end were unlawful, the whole might be so tainted with illegality as to require invalidation of the merger. While plaintiffs, by their allegations, may have assumed a difficult burden, it is not for the court to say, at a preliminary stage, that the required proof is not available to them.[1]
Plaintiffs contend also that the use made of § 253 by Deli is violative of the constitutional rights of those plaintiffs whose shares are held in street name. This contention is without merit. The registration of stock in a street name is the buyer's own doing. Whatever consequences or disadvantages may follow from such registration are the result of his own non-action. Salt Dome Oil Corporation v. Schenck, 28 Del.Ch. 433, 41 A.2d 583, 158 A.L.R. 975. He should not be heard to complain where his own act has occasioned his disadvantage.
Paragraph 7 of the complaint sets forth the capacities in which plaintiffs purport to sue, as follows:
"7. All of the plaintiffs bring this action on behalf of themselves and all other stockholders similarly situated, present and former (of American Sumatra) who sold their shares since June 28, 1960, pursuant to the Offer to Buy hereinafter mentioned, to defendant Deli, and in the right of American Sumatra."
Rule 23(a) of the rules of this Court, Del.C.Ann., provides:
"Rule 23. Class Actions.
"(a) Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is
"(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;
"(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or
"(3) several, and there is a common question of law or fact affecting the *765 several rights and a common relief is sought."
The representative capacity in which plaintiffs purport to sue is not at all clear. None of the stockholders who sold to Deli in pursuance of the offer to buy have joined in this action. Neither has any stockholder who surrendered his shares following the merger. Plaintiffs say that the claims of all stockholders, including those who sold to Deli under the offer to buy, and those who did not, depend upon "whether the offer to buy was so fraudulent and shocking to the conscience of the Court as to require the nullification of the Merger and damages." They contend that the measure of damages will be the same as to all stockholders, except that defendants will be entitled to a credit as to those who sold pursuant to the offer to buy. A difference in the measure of damages is not, they say, a deterrent to maintaining a class action. Oppenheimer v. F. J. Young, 2 Cir., 144 F.2d 387. But the representative action seeks more than damages. Plaintiffs, on behalf of the class as defined in paragraph 7 of the complaint, allege invalidity of the merger and pray for its nullification. Should this prayer be granted because the offer to buy was fraudulent the rights of some former stockholders may involve something more than a claim for damages. True, some of those stockholders who sold pursuant to the offer might be satisfied with damages. But others might see fit to sue for rescission. And what of the stockholders who surrendered their shares following the merger? Do these plaintiffs have any standing to assert the claims, if any, that such stockholders might elect? It is obvious that something more than a mere claim for damages is involved in plaintiffs' professed representative action.
Plaintiffs rely upon Oppenheimer v. Young, supra, to support their position that they are adequate representatives of the class on whose behalf they purport to sue. The only question in the Oppenheimer case was whether differences in the measure of damages were inconsistent with the requirement of "common relief" as that term is used in Federal Rule 23(a) (3). The Court very properly held that there was no inconsistency. But the "common relief" sought by these plaintiffs is not the only relief which some former stockholders of American Sumatra might elect in the event that the merger is declared invalid. Plaintiffs also rely upon Speed v. Transamerica Corp., D.C.Del., 99 F.Supp. 808, affirmed 3 Cir., 235 F.2d 369. There plaintiffs represented only those stockholders who sold pursuant to an alleged fraudulent offer to buy. Since plaintiffs themselves had sold under the offer, it was held that they were adequate representatives of that class. In the companion case of Zahn v. Transamerica Corp., D.C.Del., 99 F.Supp. 808, 844, it was held that the plaintiff therein was an adequate representative of stockholders whose shares had been redeemed and those whose shares had not, since he had been the holder of both classes of shares. The Transamerica cases tend to support defendants' rather than plaintiffs' position. Defendants' contention is also supported by the following cases: McQuillen v. National Cash Register Co., D.C.Md., 22 F.Supp. 867, affirmed 4 Cir., 112 F.2d 877, cert. den. 311 U.S. 695, 61 S.Ct. 140, 85 L.Ed. 450, rehearing den. 311 U.S. 729, 61 S.Ct. 316, 85 L.Ed. 474; Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (wherein McQuillen v. National Cash Register Co., supra, is cited with approval); Mills v. Sarjen Corporation, D.C.N.J., 133 F.Supp. 753.[2]
I am satisfied that plaintiffs may not maintain this action as representatives of either that class of stockholders who sold their shares to Deli pursuant to the offer to buy or that class who surrendered their shares on the merger. But it does not follow that plaintiffs are thereby foreclosed from maintaining a representative action on *766 behalf of any class of stockholders which they may be said to adequately represent. In addition to those already mentioned there would seem to be two other classes of stockholders, namely, those who merely retained their shares following the merger, and those who retained their shares and filed an appraisal action. As to the first class plaintiffs are adequate representatives. Mills v. Sarjen, supra. The fact that some, or even all, of the plaintiffs are, with respect to this class, owners in street name only does not preclude their suing as stockholders. Rosenthal v. Burry Biscuit Corp., 30 Del.Ch. 299, 60 A.2d 106; Gamble-Skogmo, Inc. v. Saks, 35 Del.Ch. 503, 122 A.2d 120. The cited cases hold that an equitable stockholder, that is, one who owns in street name, may maintain a stockholder's derivative suit. On principle, I can see no difference in this regard between a derivative and a representative suit. But as to the class of stockholders who retained their shares and filed an appraisal action I think it is clear that plaintiffs cannot maintain this suit on their behalf.
Subsection (i) of § 262, Title 8, Del.C. provides:
"(i) Any stockholder who has demanded payment of his stock as herein provided shall not thereafter be entitled to vote such stock for any purpose or be entitled to the payment of dividends or other distribution on the stock (except dividends or other distributions payable to stockholders of record at a date which is prior to the date of the recording of the agreement) unless the appointment of an appraiser shall not be applied for within the time herein provided, or the proceeding be dismissed as to such stockholder, or unless such stockholder shall with the written approval of the corporation deliver to the corporation a written withdrawal of his objections to and an acceptance of such consolidation or merger, in any of which cases the right of such stock holder to payment of his stock shall cease."
In Southern Production Co., Inc. v. Sabath, 32 Del.Ch. 497, 87 A.2d 128, the Supreme Court had occasion to determine the effect of the provisions of the quoted subsection upon the status of a stockholder who has perfected his right to appraisal. I think it fair to say that the Supreme Court held that such a stockholder has, to all intents and purposes, ceased to be a stockholder of the corporation. The court pointed out that by virtue of the provisions of the statute a stockholder who has perfected his right to appraisal is deprived of the three principle rights belonging to the stock, namely, "the right to vote, the right to dividends, and the right to any other distribution upon it, unless one of the three events or conditions shall thereafter occur." The court said that the status of such a stockholder is "primarily that of a monetary claimant against the * * * surviving corporation, and is more nearly analogous to that of a creditor than to that of a stockholder." It further said that "the conclusion is apparent that when a dissenting stockholder has perfected his right to appraisal the corporation has acquired a correlative right to obtain his stock upon payment therefor  a right subject to be defeated only by the occurrence of one of the three events specified in the statute." When the present action was instituted there was, among the records of this court, a pending action by certain of these plaintiffs for an appraisal of the value of their shares. The effect of the appraisal action was to convert the status of the plaintiffs therein from that of stockholders of the corporation to that of creditors thereof. Southern Production Co., Inc. v. Sabath, supra. Since those plaintiffs were not stockholders at the time of the institution of the present action they may not maintain this representative action. Taormina v. Taormina Corp., 32 Del.Ch. 18, 78 A.2d 473. Here again, the cited case held that plaintiffs in a derivative suit must be stockholders of the corporation. The *767 same principle seems logically applicable to a representative action.
I am, therefore, of the opinion that the only class of stockholders on whose behalf the plaintiffs may maintain a representative action are those who retained their shares following the merger and did not join in the appraisal action. The intervening plaintiff, Galdi Securities Corporation, is of this class.
Plaintiffs' position as to their individual causes of action is stated, according to their brief, to be that they "and each of them were affected by the Offer to Buy because * * * had it not been accepted by the remaining owners of 200,000 shares of the common stock of American Sumatra, the `short merger' could not have become effective or operative." Defendants say that plaintiffs have no individual rights with respect to the offer to buy since they did not tender their shares pursuant thereto. While proof of the basis stated would not be sufficient to sustain the individual rights of action, even assuming that the offer to buy was fraudulent, nevertheless, since the offer to buy is alleged to be part of a conspiracy "to loot American Sumatra of its assets and properties" at the expense of minority stockholders, it is possible that plaintiffs may be able to offer evidence sufficient to carry their burden. This issue can not, therefore, be resolved upon the present motion.
Plaintiffs also purport to sue derivatively on behalf of American Sumatra and predicate this cause upon the offer to buy, alleged seizure of corporate opportunities rightfully belonging to American Sumatra, and the wrongful appropriation of monies of American Sumatra to certain purposes set forth in the complaint. I am satisfied that plaintiffs may not maintain the asserted derivative action. This is clear as to those stockholders who have demanded an appraisal. Southern Production Co., Inc. v. Satath, supra. See also, Pikor v. Cinerama Production Corp., D.C.N.Y., 25 F.R.D. 92. But it is also true as to any other stockholders of American Sumatra (the old company) asserting in the right of the old company claims against its directors and others which it may have had prior to the merger.
8 Del.C. § 253(b) provides that upon the recording of the certificate of ownership and merger "all of the estate, property, rights, privileges and franchises of the corporation or corporations which did not survive the merger shall vest in and be held and enjoyed by the surviving corporation as fully and entirely and without change or diminution as the same were before held and enjoyed by the corporation or corporations which did not survive the merger and be managed and controlled by the surviving corporation * * * in its name." It is thus provided that upon a merger under § 253 "the old corporations have their identity absorbed into * * * the one into which they were merged." Argenbright v. Phoenix Finance Co., 21 Del.Ch. 288, 187 A. 124. By virtue of the merger here involved the derivative rights asserted passed to the surviving corporation, Tobacco Holdings, Inc. now American Sumatra Tobacco Corporation (the new company). Arnstein v. Bethlehem Steel Corporation, D.C.N.Y., 18 F.Supp. 916. American Sumatra Tobacco Corporation (the old company) could not thereafter have instituted an action against its directors and others for an accounting, and since the old corporation was itself barred because the right of action was transferred to Tobacco Holdings, Inc., the stockholders of the old company were without derivative status. Arnstein v. Bethlehem Steel Corporation, supra. In the cited case the surviving corporation was not a party to the action. However, the court, while specifically noting its absence as a party, said that "if any right of action in a derivative suit lies, it must be between stockholders of the Delaware [surviving] corporation with the Delaware corporation as a necessary party." Accordingly, defendants' motion to dismiss insofar as it relates to the derivative claims asserted by plaintiffs must be granted.
*768 In summary, defendants' motion to dismiss is granted 
(1) as to the asserted representative causes of action on behalf of those stockholders who
(a) sold their shares to Deli pursuant to the offer to buy,
(b) surrendered their shares on the merger,
(c) retained their shares following the merger and filed or joined in the appraisal action;
(2) as to the asserted derivative causes of action.
In all other respects the motion to dismiss is denied.
Order on notice.
NOTES
[1] In Stauffer v. Standard Brands Incorporated, Del.Ch., 187 A.2d 78, the Supreme Court observed that "it is difficult to imagine a case under the short merger statute in which there could be such actual fraud as would entitle a minority to set aside the merger." But the court found it unnecessary in that case to decide the point.
[2] While none of the three cases here cited was decided under the Federal rule corresponding to Chancery Rule 23(a), each of them considered the question of adequacy of representation in class actions.