Robert T. DOFFLEMYER and Josephine C. Dofflemyer, Plaintiffs,

v.

W.F. HALL PRINTING COMPANY, a corporation of the State of Delaware, Mobil-Hall Corporation, a corporation of the State of Delaware, Mobil Holdings Corporation, a corporation of the State of Delaware, Mobil Corporation, a corporation of the State of Delaware, Canadian Imperial Bank of Commerce Trust (Bahamas) Limited, Canadian Imperial Bank of Commerce, Anthony J. Allegretti, Robert L. Epstein, Robert S. Knox, Morris I. Leibman, William G. Maloney, Herbert F. Moeller, Patrick L. O'Malley, Jay A. Pritzker, Robert A. Pritzker, Directors of Mobil-Hall Corporation, Directors of Mobil Holdings Corporation, Directors of Mobil Corporation, Beneficiaries of Various Trusts for the Benefit of Certain Descendants of Nicholas J. Pritzker, Deceased, and their Spouses as their Interest may Appear in Trusts Administered by Canadian Imperial Bank of Commerce Trust (Bahamas) Limited as Trustee, Salomon Brothers, a corporation of the State of New York and J. Ira Harris, Defendants.

Civ. A. No. 82–77.

United States District Court,
D. Delaware.

Jan. 28, 1983.

Lester J. Taufen, Connolly, Bove & Lodge, Philip D. Saxon, Wilmington, Del., for plaintiffs.

Lewis S. Black, Jr., Donald E. Reid, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Alan R. Sloate, New York City, for defendants W.F. Hall Printing Co., Mobil Holdings Corp. and Mobil Corp.

Louis J. Finger, Helen L. Winslow, Richards, Layton & Finger, Wilmington, Del., for defendants Jay A. Pritzker, Canadian Imperial Bank of Commerce, and Canadian Imperial Bank of Commerce Trust Co. (Bahamas) Ltd.

Michael D. Goldman, Gregory A. Inskip, Potter, Anderson & Corroon, Wilmington, Del., Theodore Gewertz, Wachtell, Lipton, Rosen & Katz, New York City, for defendants Salomon Brothers, Inc. and J. Ira Harris.

## OPINION

STAPLETON, District Judge:

Robert Dofflemyer and Josephine Dofflemyer, former shareholders of W.F. Hall Printing Company, a Delaware corporation ("Hall"), have brought this class and derivative action on behalf of themselves and other Hall shareholders owning Hall stock at the time of the acts complained of in the complaint. The litigation arises out of actions by defendants in connection with a merger of Hall and a second-tier subsidiary of Mobil Corporation, Mobil-Hall Corporation ("Mobil-Hall"). The complaint alleges violations of Sections 10(b) and 14(a) of the Securities Exchange Act of 1934, as well as claims of breach of fiduciary duty under state law. The case is currently before me on defendants' motion to dismiss.

The agreement effecting the merger of Mobil-Hall into Hall provided that all shares of Hall would be converted into the right to receive $27.50 in cash and all shares of Mobil-Hall would be converted into shares of Hall. As a result of the merger, Hall became the wholly-owned subsidiary of Mobil Holdings Corporation ("Mobil Holdings"), which in turn is the wholly-owned subsidiary of Mobil Corporation ("Mobil").

The merger agreement was approved by the respective boards of directors of Mobil Holdings, Hall, and Mobil-Hall on or about November 27, 1978. A proxy statement detailing the proposed merger was thereafter distributed to Hall shareholders on January 29, 1979 and the proposed merger was submitted to the shareholders of Hall for their approval on February 20, 1979. The merger was approved by an affirmative vote of 83.6% of the shares of Hall and became effective on February 21, 1979.

Plaintiffs are two former shareholders of Hall. Approximately two weeks before the Hall shareholders voted to approve the merger, plaintiffs objected to the merger and demanded an appraisal of the value of their shares. By letter dated February 23, 1979, Hall advised plaintiffs of the effectiveness of the merger and of their right to withdraw their demand for appraisal if they so requested prior to April 23, 1979. Plaintiffs elected not to withdraw their demand and instead filed an action for an appraisal in the Delaware Chancery Court on June 14, 1979.

On July 20, 1979, plaintiffs brought a second action in the Delaware Chancery Court which sought to rescind the merger on the grounds, among others, that the $27.50 per share price paid to the shareholders under the terms of the merger was unfair, that the Proxy Statement contained material omissions, and that the directors of Hall breached their fiduciary duties to the shareholders of Hall. Over the course of the next six months, plaintiffs filed three separate motions seeking to stay the appraisal action pending resolution of their action challenging the merger. Those motions were all denied by the Chancery Court. Finally, six days before the date set for the appraisal hearing, plaintiffs filed a motion to dismiss the appraisal action. That motion was likewise denied by the Court.

A hearing was held on plaintiffs' appraisal petition on January 30, 1980 and the Chancery Court found that the appraisal value of plaintiffs' shares of Hall stock at the time of the merger was $22.22 per share. *Dofflemyer v. W.F. Hall Printing Company,* C.A. No. 5906 (Del.Ch. September 17, 1980). Pursuant to an Order and Judgment entered by the Chancery Court subsequent to the hearing, plaintiffs surrendered their Hall stock and were paid $22.22 per share plus 11.8% interest from the date of the merger to the date of payment.

Plaintiffs did not appeal from the Chancery Court determination of the appraisal value of the Hall stock, but on December 17, 1980, they did appeal from the Chancellor's denial of their motion to dismiss the appraisal action. The Delaware Supreme Court affirmed the Chancellor's denial of the plaintiff's motion to dismiss and held that plaintiffs' exercise of their appraisal rights was irrevocable. *Dofflemyer v. W.F. Hall Printing Co.,* 432 A.2d 1198 (Del.1981).

In the merger action, plaintiffs filed a motion for class certification on November 27, 1979. Plaintiffs have not filed a brief in support of this motion, and have taken no other action in their second Chancery Court action since April 14, 1981.

On February 19, 1982, the plaintiffs filed this third action relating to the Hall merger. This latest action by the plaintiffs seeks to challenge the merger on the same grounds asserted in the second Chancery action. The complaint also asserts, however, that the defendants violated the federal securities laws in connection with the merger. Defendants have moved the Court to dismiss this action on a number of grounds.

## I. LIMITATIONS AND THE SECTIONS 10(b) AND 14(a) CLAIMS

█ Because there is no federal statute imposing an express limitation upon private actions brought under Section 10(b) and 14(a) of the Securities Exchange Act, a federal court must apply the limitations law of the forum state. *Roberts v. Magnetic Metals Co.,* 611 F.2d 450, 452 (3d Cir.1979). Typically, the selection of the appropriate limitations period involves a choice between the limitations period of the state's Blue Sky Law and the period for common law fraud. Delaware has a two-year period applicable to actions under its Blue Sky Laws, 6 Del.C. § 7323(e), but a three-year period for common law fraud, 10 Del.C. § 8106. The Third Circuit, in two recent cases, has delineated the path to be followed in making this choice.

In the first case, *Roberts v. Magnetic Metals Co.,* 611 F.2d 450 (3d Cir.1979), a selling shareholder brought suit in New Jersey against the corporation, its merger partner, and their broker agent. The complaint alleged that defendants had made misrepresentations and omissions in connection with the solicitation of shareholder approval of the merger of the corporation and its partner in violation of Sections 10(b) and 14(a). The majority held that the suit was governed by the New Jersey six-year statute of limitations for common law fraud, and not by the New Jersey two-year Blue Sky limitations period. Although Judge Gibbons and Judge Sloviter, comprising the majority, wrote separately, they both agreed that since the operative facts did not give rise to a cause of action under New Jersey's Uniform Securities Act but did give rise to one

under its common law of fraud, the six-year limitation period for fraud applied.

In the second case, *Biggans v. Bache Halsey Stuart Shields,* 638 F.2d 605 (3d Cir. 1980), an investor who was the client of a brokerage house sued the brokerage house in Pennsylvania for "churning" his account in violation of Section 10(b). The court, again, held that the common law limitations period rather than the Blue Sky limitations period applied. The court noted that although the Pennsylvania Blue Sky law arguably prohibits "churning," no damage relief is available in an action brought under that statute. Further, the Pennsylvania Blue Sky law expressly stated that its remedies were not intended to limit any liability existing under common law. The court concluded that the lack of a Blue Sky remedy and the fact that the Blue Sky law was a supplement to the common law compelled the application of the common law limitations period.

■ It is clear from these two cases that where a plaintiff has no remedy under the state's Blue Sky law, but the operative facts alleged in the complaint give rise to a claim under the state's common law, it is the limitations period applicable to a common law claim rather than the Blue Sky period which governs federal claims under Rule 10b–5. Thus, the first step in deciding which Delaware's limitations period applies to the current action is to examine whether the facts alleged state a cause of action under the Delaware Blue Sky law.

The Delaware Supreme Court has addressed the question of the applicability of the Delaware Blue Sky law, enacted in 1973, only once. In *Singer v. Magnavox,* 380 A.2d 969 (Del.Supr.1977), plaintiff claimed that defendants had violated 6 Del.C. § 7303 of the Act by issuing false and misleading statements of material fact relating to a merger. The court held that the Delaware Blue Sky Law did not apply:

[W]e read the Securities Act as a Blue Sky Law governing transactions which are subject to Delaware jurisdiction under traditional tests. To state it another way, we do not read the Act as an attempt to introduce Delaware commercial law into the internal affairs of corporations merely because they are chartered here. Of course, a Delaware corporation is bound by the Act, if it is otherwise applicable. But it is not bound simply because the company is incorporated here.

There is, of course, a presumption that a law is not intended to apply outside the territorial jurisdiction of the State in which it is enacted. [cites omitted]

Plaintiffs are residents of Pennsylvania and were not solicited here. Nor does it appear that the contract was made in Delaware nor that any part of the "sale" occurred here. It follows that the Delaware Securities Act does not apply and that the judgment of the Court of Chancery was correct in so ruling.

We are not persuaded that because the corporate merger vote was held in Delaware this is a sufficient connection with the alleged fraud to permit plaintiffs to invoke the Act. That is simply too fragile a basis on which to establish subject matter jurisdiction over an alleged fraud in Pennsylvania or over a contract made in New York. And plaintiffs' arguments based on registration of the merger documents in Delaware, see 8 *Del.C.* § 103, and the statutory situs of the Magnavox stock in this State, 8 *Del.C.* § 169, are equally tenuous and we reject them for the same reason.

■ The parties have not suggested that there is any connection between the events challenged in the present action and the State of Delaware, other than the fact that the defendant corporations are incorporated here. Plaintiffs reside in California and received their proxy solicitation there, while the merger vote apparently took place in Illinois. These facts provide an even more tenuous connection with Delaware than existed in *Singer,* where, even though the plaintiff resided outside the state as here, the merger vote took place within the state. Thus, on the basis of these facts, it is clear from *Singer* that a Delaware court would not entertain an action under the Delaware

Blue Sky law. Moreover, it is clear from the text of the statute itself that Delaware's Blue Sky law is not intended to supplant existing common law remedies. 6 Del.C. § 7323(h). Accordingly, I conclude that the two-year limitations period is not applicable to this action. *Roberts, Biggans, supra.*

A Delaware state court would, however, entertain an action for common law fraud and breach of fiduciary duty based on the operative facts alleged in the complaint. The limitations period normally applicable to such claims is three years. 10 Del.C. § 8106. Defendants suggest, however, that this Court must further look to Delaware's "borrowing statute," 10 Del.C. § 8121, and apply the shorter of the three-year period or the period provided for by the law of the state "where the cause of action arose." [1] Defendants have suggested only one candidate, namely, California, the state of plaintiffs' residence, as the place "where the cause of action arose." The limitations period applicable to claims of misrepresenta-

tion under California's Blue Sky law, is the shorter of one-year from the date of discovery of the facts, or four years from the violation itself. Cal.Corps.Code § 25506. [2] California has a three-year limitations period, however, which is applicable to common law fraud actions. Cal.Civil Proc. § 338. [3] Defendants argue that if the cause of action in this case arose in California, it is the one-year Blue Sky period which applies and not the three-year period for common law fraud.

Defendants' argument misconstrues the nature of the required inquiry into state law. The inquiry is what limitations period a Delaware court would apply to a claim of common law fraud in a hypothetical state action based on the facts in the federal action. If because of the particular facts here, a Delaware court would look to California limitations law pursuant to Delaware's "borrowing statute", the inquiry it would make would be whether the claim is time-barred in the California courts. [4] The

---

1. 10 Del.C. § 8121 provides in part:
    Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action. . . .

2. California Corporations Code, Section 25401, makes it unlawful to engage in certain securities transactions:
    It is unlawful for any person to offer or sell a security in this state or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.
    Section 25501 establishes a civil action for violations of Section 25401:
    Any person who violates Section 25401 shall be liable to the person who purchases a security from him or sells a security to him, who may sue either for rescission or for damages (if the plaintiff or the defendants, as the case may be, no longer owns the security), unless the defendant proves that the plaintiff knew the facts concerning the untruth or omission or that the defendant exercised rea-

sonable care and did not know (or if he had exercised reasonable care would not have known) of the untruth or omission. . . .
    Section 25506 provides the applicable statute of limitations:
    No action shall be maintained to enforce any liability created under Section 25500, 25501, or 25502 (or Section 25504 or Section 25504.1 insofar as they related to those sections) unless brought before the expiration of four years after the discovery by the plaintiff of the facts constituting the violation, whichever shall first expire.

3. Cal.Civil Proc. § 312, provides:
    Civil actions, without exception, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued, unless where, in special cases, a different limitation is prescribed by statute.
    Section 338 then provides in part:
    Within three years:
    \* \* \* \* \* \*
    4. An action for relief on the ground of fraud or mistake.

4. I assume, without deciding, that the forum state's "borrowing statute" is properly applied to a federal action based on federal securities laws claims where the cause of action arose outside the forum state. For decisions in the Second Circuit applying a "borrowing statute," *see Robertson v. Seidman & Seidman,* 609 F.2d

policy behind the Delaware statute is to provide repose in situations where the defendant would have repose in the state where the claim arose and the question thus would be whether a California court would entertain an action based on the operative facts alleged in this complaint. Because the California Blue Sky law does not limit any liability existing under common law, a California court would apply the three-year period of Section 338 to a claim of common law fraud based on misrepresentation in a proxy statement and would entertain this suit. *Bowden v. Robinson,* 67 Cal.App.3d 705, 136 Cal.Rptr. 871 (Cal.App.1977). Thus, a Delaware court would not apply California's one-year Blue Sky period under the "borrowing statute." Accordingly, under the authority of *Roberts* and *Biggans,* this Court must likewise apply a three-year period. Defendants do not contend that the federal claims are barred by a three-year limitations period.

## II. LIMITATIONS AND THE STATE COMMON LAW CLAIMS

■ There is no disagreement among the parties that the Delaware three-year statute of limitations, 10 Del.C. § 8106, applies to the common law claims of mismanagement and breach of fiduciary duty. *Halpern v. Barran,* 313 A.2d 139 (Del.Ch. 1973). The disputed issue is when the three-year period began to run. Under Section 8106, the three-year period does not begin to run until the cause of action has accrued. It is a basic principle of limitations law that a cause of action does not accrue before the right to institute a suit arises. *See e.g.,* 54 C.J.S. *Limitations of Actions* § 109.

■ The plaintiffs' state law claims are that the defendants, in breach of their fiduciary duty, engineered a merger which fraudulently benefited the majority shareholders' interests and which served no valid business purpose. In order to consummate this merger, the majority shareholders and the board of directors are alleged to have (1) obtained an investment opinion of a banking firm they knew was not independent; (2) maneuvered to avoid an 80 percent "supermajority" provision in the bylaws; and (3) issued a proxy statement which was false and misleading.

The plaintiffs could not have sued for damages until the merger was actually accomplished—until that time, they had suffered no injury by the defendants' acts. This case is analogous to *Kaufman v. Albin,* 447 A.2d 761 (Del.Ch.1982), where the Chancery Court denied defendants' motion to dismiss on the ground that the claim was time-barred. Plaintiffs' allegations were that the directors had wasted corporate assets by improperly permitting the officer-optionees of the corporation to surrender their stock options in connection with a tender offer for the corporation's stock. The Court of Chancery held that the limitations period began to run at the time the tender offer was accepted by the tendering of 52% of the outstanding shares and not at the time of the directors' resolution accelerating the exercise date of unexercised options. Until that time, the transaction which was the subject of the suit was not accomplished and there had been no injury. Similarly in the present case, the merger transaction which is the subject of this suit was not accomplished and no injury occurred until the merger was effected.[5]

---

583 (2d Cir.1979); *Gluck v. Amicor, Inc.,* 487 F.Supp. 608 (S.D.N.Y.1980).

**5.** The cases relied upon by defendants, *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) and *Brown v. Automated Marketing Systems, Inc.,* C.A. No. 6715 (Del.Ch. March 22, 1982), are inapposite.

In *Ricks,* the Supreme Court held that a claim under the civil rights laws charging discriminatory denial of academic tenure accrued at the time that tenure was denied, not at the

time plaintiff's employment actually ended. It was the habitual practice of the defendant college to give a one year terminal contract to those professors, including Ricks, denied tenure. Ricks did not complain that he was discriminated against with respect to his termination at the end of the one year contract, rather he complained only with respect to the denial of tenure. Thus, the injury was the denial of tenure and not the loss of employment.

*Brown* is also inapplicable. In that case, the Court of Chancery held that a plaintiff who

### III. ISSUE PRECLUSION

■ Under certain circumstances, an issue of fact or law determined in one action between two parties is binding upon the parties in a later action. Defendants contend that the valuation of Hall stock made in the appraisal proceeding in the Court of Chancery is binding upon this court and precludes the award of any damage relief because the stock was appraised at $22.22 per share, as of the time of the merger, an amount $5.28 less than the $27.50 per share offered in the merger agreement. In order to claim the benefit of this "issue preclusion," defendants must show that the *same* issue of fact to be determined here was, in the former action, (1) litigated by the parties, (2) determined by the court, and (3) necessarily so determined. Restatement of Judgments, Second § 27. *Haize v. Hanover Ins. Co.,* 536 F.2d 576, 579 (3d Cir.1976).

The Court of Chancery determined that the value of Hall stock at the time of the merger was $22.22. In reaching this conclusion the Court accepted the testimony of defendants' experts that the earnings value at the time of the merger was $21.20 per share, the asset value was $22.47 per share, and the market value was $23.00 per share. The estimate of the market value of Hall stock at the time of the merger in February, 1979, was based on the stock's price of $23.00 per share on the New York Stock Exchange in mid-September of 1978. The expert chose this value because the price of Hall stock rose during the period after mid-September apparently due, at least in part, to a leak of information about the proposed merger. Because the price of two other major printing firms declined during the same period, the expert attributed the en-

tire amount of the rise to the market's expectation of a merger and pursuant to the express command of 8 Del.C. § 262(f) disregarded that amount in determining market value.

The Court also accepted the experts' testimony that there were no factors peculiar to Hall and its operation which would warrant giving a greater weight to one valuation approach over the other. Accordingly, equal weight was given to each of the three factors in arriving at the final figure of $22.22 per share.

■ If the valuation by the Court of Chancery is to have the preclusive effect on the issue of damages that defendants say it does, the Court of Chancery must actually have determined the same "value" that this Court would determine for the purposes of computing damages under the federal securities laws. Section 28(a) of the Act, 15 U.S.C.A. § 78bb, which is applicable to actions under Section 10(b), as well as Section 14(a), provides that "no person permitted to maintain a suit for damages under the provisions of this chapter shall recover ... a total amount in excess of his actual damages on account of the act complained of." This section prohibits the recovery of punitive damages but does not limit a plaintiff's recovery of actual damages to out-of-pocket loss. *Gould v. American Hawaiian SS. Co.,* 535 F.2d 761 (3d Cir.1970). In the context of a merger carried out by means of misleading solicitation of proxies for shareholder approval of a merger, "actual damages" may include the loss of possible profit, unless wholly speculative, from securing a merger agreement more favorable to plaintiff. *Gould* at 782.[6]

---

purchased shares after reading a press release indicating that the board of directors had approved a plan of merger did not have standing to challenge the merger when it was carried out according to the plan. The holding of that case involved a determination of the times when a plaintiff must own stock in a corporation in order to have standing to challenge a merger and is not pertinent to when, if standing had existed, the plaintiff could have sued for damages.

**6.** The holding of *Gould* came in the context of a claim under 14(a). Likewise, for a 10b–5 claim, the Third Circuit has held that "the measure of damages is the difference between what the buyer paid for his stock and what he would have paid had there been no fraudulent conduct." *Sharp v. Coopers & Lybrand,* 649 F.2d 175 (3d Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982). In the context of a merger, it is clear that this standard also requires that the value of lost opportunities be taken into account.

As I understand plaintiffs' theory of the case, they claim that, but for a breach of fiduciary duty, Hall would have negotiated either a form of transaction which was tax free to the Hall stockholders or a price (above $27.50) which reflected a premium for there being a recognition of taxable gain by Hall stockholders. *Cf. Shrage v. Bridgeport Oil Co.,* 31 Del.Ch. 305, 71 A.2d 882 (Del.Supr.1950). Further, plaintiffs claim that if the proxy statement had not been misleading, they would have been able to stop the merger which in fact occurred and to force the negotiation of a new transaction which would have been either non-taxable or reflect a premium for its taxable character. *Cf. Gould v. American Hawaiian SS. Co.,* 535 F.2d 761 (3d Cir.1970). On either claim, the damages would presumably be the difference between what plaintiffs received in the appraisal action and what they would have received if there had been no wrongdoing. While it is too early in the game to decide precisely what an analysis of the damage issues will entail, it is likely that a determination of the value of what plaintiffs would have received absent any wrongdoing will involve different factors than those considered by the Court of Chancery in determining the appraised value of the plaintiffs' stock in accordance with Section 262 of Delaware's General Corporation Law. It will presumably involve, for example, a consideration of what Mobil was willing to pay for the Hall stock. The value of the stock to Mobil, however, is a factor which the Chancellor could not and did not consider in fixing the appraised value.

It follows that the Chancellor's finding of an appraised value of $22.22 does not preclude plaintiffs from contending that they are entitled to an award of damages in this action. This does not mean, however, that the determinations of fact in the prior action will have no preclusive effect here. It well may be that some of those determinations will be relevant to the damage issues in this case and, if so, they will be binding on the plaintiffs here.

Plaintiffs argue that nothing in the appraisal action should be given preclusive effect because they did not wish to litigate that action by the time it got to trial. This fact simply is not relevant. Facts involving the value of Hall shares were put in issue in the appraisal action, plaintiffs were afforded a full and fair opportunity to litigate those issues, and the Court made findings thereon. If facts so found are relevant here, anyone who was a plaintiff in the appraisal action will be precluded from contesting them here.

## IV. ELECTION OF REMEDIES AND MOOTNESS

Defendants correctly point out that a stockholder of a Delaware corporation who elects to pursue his appraisal remedy under the Delaware General Corporation Law cannot thereafter sue derivatively on behalf of the corporation. This is so because "the effect of the appraisal action . . . [is] to convert the status of the plaintiffs therein from that of stockholders of the corporation to that of creditors thereof." *Braasch v. Goldschmidt,* 41 Del.Ch. 519, 199 A.2d 760, 766 (Del.Ch.1964). Under Delaware law, a stockholder electing appraisal is also foreclosed from attacking the merger through a fraud claim asserted on his own behalf. *Braasch* at 766. This does not mean, however, that defendants are entitled to have plaintiffs' state law claims dismissed at this point.

While no Delaware case has so held, I predict that the Supreme Court of Delaware would hold that a stockholder who elects appraisal in ignorance of fraud in the merger will be entitled to rescind that election upon discovery of the fraud even though his election would otherwise be irrevocable under the appraisal statute. Judge Steel of this Court made a similar prediction in *Voege v. American Sumatra Tobacco Corporation,* 241 F.Supp. 369 (D.Del.1965). This may be relevant here because plaintiffs claim that they were ignorant of the fraud they now assert at the time they elected their appraisal remedy.

My prediction and this claim are sufficient to get plaintiffs past a motion to dismiss.[7]

■ Defendants also urge, on the basis of *Bokat v. Getty Oil Co.*, 262 A.2d 246 (Del.Supr.1970), that all derivative claims asserted on behalf of Hall must be dismissed because they are moot. In *Bokat*, the plaintiff instituted suit on behalf of Tidewater Oil Company charging that Tidewater's majority stockholder, Getty Oil Company, had wrongfully exploited Tidewater for Getty's exclusive benefit. The action sought to recover damages for injuries allegedly incurred by Tidewater as a result of Getty's self-dealing. Six years after institution of the suit, the stockholders of Getty and Tidewater approved a merger of the two companies and Getty survived the merger. Thereafter, Getty successfully moved for summary judgment on the derivative claims on the ground that they had been rendered moot as a result of the merger. Chief Justice Wolcott held:

These, then, are derivative actions seeking to recover damages from Getty Oil for the benefit of Tidewater. As such, if the actions had merit, they were assets of Tidewater which, under 8 *Del.C.* § 259, passed on the merger to Getty Oil along with Tidewater's other assets.

The action against Getty Oil has therefore been made moot by the merger, for if this were not so, the anomalous situation of a corporation suing itself for its own benefit would be presented. *Braasch v. Goldschmidt*, 41 Del.Ch. 519, 199 A.2d 760. This results from the nature of a derivative action which is to be considered as though the injured corporation, itself, was suing the defendants. *Keenan v. Eshleman*, 23 Del.Ch. 234, 2 A.2d 904 . . . .

262 A.2d at 249.

*Bokat* is controlling with respect to the derivative claim asserted against Mobil-Hall. When the merger occurred, Hall, as the surviving corporation, inherited Mobil-Hall's contingent liability on this claim. Since a corporation can not sue itself for its own benefit, the derivative claims asserted on behalf of Hall against Mobil-Hall must be dismissed as moot. The rationale of *Bokat* does not apply, however, to the derivative claims against the other defendants.

## V. MATERIALITY

■ One requirement for a cause of action under Rule 10b–5 and Section 14(a) alleging that a proxy statement was misleading because of an omission or misrepresentation of fact is that the fact must be material. The standard for materiality is that "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). This does not require proof that disclosure would have caused a reasonable shareholder to change his or her vote; it is only necessary that the omitted facts would have assumed "actual significance in the deliberations of the reasonable shareholder." *TSC* at 499, 96 S.Ct. at 2132. The same definition has been articulated in the context of the Delaware rule requiring disclosure of material facts by a prospective buyer owing a fiduciary duty to a prospective seller. *Lynch v. Vickers Energy Corp.*, 383 A.2d 278, 281 (Del.Supr.1977). Defendants contend that all material facts were fully disclosed. I shall examine separately each of the categories of allegedly omitted or misleading information challenged by defendants as not material.

### 1. *Conflicts of Interest*

■ The plaintiffs' primary argument is that the proxy statement was misleading because it gave the impression that the merger had been negotiated for Hall at

---

**7.** Plaintiffs appear to have filed their Chancery fraud action substantially before asking the Court of Chancery to relieve them of their election and dismiss the appraisal action. If they had knowledge of the fraud they now assert at the time of their motion to dismiss and either could or did urge it as a ground for relief, there may be some preclusion effect here. The parties have not briefed the issue, however, and I express no opinion with respect to it.

arms length by persons sharing a common interest with all Hall stockholders.

The true facts, according to plaintiffs, are as follows: The merger was negotiated by Gordon R. Worley, representing the Mobil interests, Jay Pritzker, representing the Pritzker interests, and J. Ira Harris of Salomon Brothers, Inc. ("Salomon Brothers"), representing Hall and Hall stockholders. Hall management was deliberately and totally excluded from the negotiations. Since Salomon Brothers had substantial and continuing ties to Mobil and the Pritzkers, as well as a financial interest in closing the deal, and since Jay Pritzker had personal interest in having a cash transaction, this meant that the minority stockholders who had an interest in a tax free transaction and a continuing equity interest, or in a premium for a cash transaction, were represented only by persons having a conflict of interest. Moreover, it is charged that a non-cash tax free transaction was never considered by the negotiators or the Hall board because Jay Pritzker ruled it out at the commencement of the negotiations.

In addition to falsely giving the impression that minority stockholders were represented in the negotiation of the merger terms by Hall management, plaintiffs maintain that, in this context, the proxy was misleading in failing to disclose that Salomon Brothers (whose financial interests were disclosed) acted not as an advisor to Hall management but as Hall's sole negotiator, that the Pritzker interests whose stock was being held in Bahamian trusts would not have to recognize gain on a cash transaction,[8] and that Jay Pritzker had foreclosed the possibility of a tax free transaction.

The defendants dispute significant portions of what plaintiffs claim to be the true facts. Moreover, they stress that there are flaws in plaintiffs' logic. They point out, for example, that plaintiffs recognize the propriety of a cash transaction with a fair premium for Hall stockholders and that Jay Pritzker had no conflict of interest when it came to negotiating for as much cash as possible in the cash transaction now under attack.

I am unwilling to say on the basis of the current record that plaintiffs will be unable to prove any set of facts entitling them to relief on this "conflict of interest" claim. The current record simply provides an unsatisfactory basis for deciding whether the proxy materials were materially misleading with respect to the negotiation of the merger.

### 2. The Supermajority By-Law Provision

Section 1.6 of the Hall by-laws requires an 80% supermajority to approve a merger with a "related entity." A "related entity" is defined as the beneficial owner of 10% or more of the voting shares entitled to vote on the merger and a beneficial owner includes any person who (1) has the right to vote or to direct the voting of such stock or (2) has "any agreement, arrangement or understanding with any other person or persons concerning the acquisition, disposition or voting" of such stock.

Hall's proxy statement stated that no party to the transaction held 10% or more of Hall stock or had any agreement, arrangement or understanding with respect to the voting of such stock, and that, therefore, the supermajority provision was inapplicable. Plaintiffs allege that this statement was misleading because they claim that the Pritzker interests in fact had an understanding with Mobil that their Hall shares would be voted in favor of the merger. (Complaint ¶¶ 20(a), 27, 42(c)).

Defendants interpret the by-law to mean that the arrangement or understanding must extend beyond an arrangement as to the vote on the merger and the conversion of the stock pursuant to the merger. I do not agree; if this were the proper interpretation, the clause would merely be repetitive of the prior clause which defined a beneficial owner to include any person with the right to vote the stock. There is a dispute of fact, however, as to whether any such agreement existed. If all that is final-

---

**8.** The fact that much of the Pritzker stock was held in Bahamian trusts was disclosed, but this does not constitute notice of the conflict of interest which plaintiffs allege.

ly shown is that the Pritzkers had expressed an intention to vote in favor of the merger, the by-law is not applicable. Plaintiffs at this time, however, maintain there was more than just an expressed intention to vote in favor of the merger.

Defendants also contend, even assuming the proxy statement erroneously stated that the supermajority provision of the by-laws was not applicable because there was no "arrangement" or "understanding", that the misrepresentation was not material because the by-law is itself invalid under the Delaware Corporation Law. Their position is that a provision requiring a higher vote than that required by statute must be in the certificate of incorporation rather than in the by-laws.[9] The issue thus posed is clearly a litigable one. This does not mean, however, that the statement in the proxy was not material. The fact that there was a basis for someone to challenge the merger if fewer than 80% of the shareholders approved it would itself appear to be material.

### 3. The Loeb Rhoades Opinion

As set forth in the proxy statement, the board of directors of Hall engaged Loeb Rhoades, Hornblower & Co. ("Loeb Rhoades"), an investment banking firm, to perform certain financial services for Hall in connection with the proposed merger. In particular, Loeb Rhoades was asked for a preliminary view of the fairness of a $27.50 per share offer.

Plaintiffs insist that the contents of what it refers to as the "Loeb Rhoades report" should have been disclosed in the proxy statement. The "report" referred to, however, is an internal Loeb Rhoades memorandum written by two analysts to its commitment committee. The memorandum reveals on its face that it represents the ten-

tative views of its authors based upon their preliminary study. Moreover, the tentative conclusion was that the merger terms were fair and the facts concerning Hall which were relied upon in formulating this tentative conclusion were reported in the proxy materials. Under these circumstances defendants had no duty to disclose the contents of the Loeb Rhoades memo under the federal securities laws or under the principles of *Lynch v. Vickers Energy Corp.*, 383 A.2d 278 (Del.Supr.1977).

### 4. The Unfairness of the Merger

The Hall proxy was also allegedly misleading because the directors failed to disclose the unfairness of the merger and the lack of a valid business purpose for the merger.[10] Such allegations have consistently been held not to state a violation of either the federal securities laws or Delaware law. *Biesenbach v. Guenther*, 588 F.2d 400, 402 (3d Cir.1978); *Fisher v. United Technologies Corp.*, 6 Del.J. of Corp.Law, 380, 386 (Del.Ch.1981).

### 5. The Rights of Hall Shareholders Opposing the Merger

Finally, the complaint contains several allegations that defendants failed to disclose the complete legal picture with respect to shareholders who might wish to oppose the merger. Thus, for example, plaintiffs claim that the proxy statement failed to disclose the burden of proof in any legal controversy over the merger (¶ 20(i)) and the "legal or equitable remedies," apart from statutory appraisal (8 Del.C. § 262) "which would also be available to such stockholders, including the right to seek equitable relief and damages arising out of any fraud or illegality...." (¶ 20(k)).

It is now well established that such allegations do not state a claim under either

---

**9.** Section 251(c) of the Delaware Corporation Law which requires that a merger agreement be submitted for shareholder approval provides that a majority vote is sufficient to adopt the agreement. Section 102(b)(4) permits the certificate to contain "provisions requiring for any corporate action, the vote of a larger portion of the stock ... than is required by this chapter."

**10.** Complaint, paragraphs 20(d), (h), (j) and (*l*). For example, paragraph 20(d) alleges that the proxy statement misleadingly "represented that the directors of Hall believed that the proposed merger was in the best interests of Hall and all its stockholders, whereas, in fact, the directors of Hall knew, or should have known, that the merger was grossly detrimental and unfair to Hall and its stockholders, other than the Pritzker interests.

the federal securities laws or Delaware law. The mandate that all material facts of the transaction must be disclosed "does not require that the proxy contain a statement of suggested strategy for those wishing to oppose the transaction." *Gans v. Filmway, Inc.,* 453 F.Supp. 1116, 1121 (E.D.Pa.1978), *aff'd without op.,* 595 F.2d 1212 (3d Cir. 1979); *Accord* with respect to state law, *Fisher v. United Technologies, Inc.,* 6 Del.J. of Corp.Law, 380, 384 (Del.Ch.1981).

## VI. THE SALOMON BROTHERS AND J. IRA HARRIS

Salomon Brothers and one of its partners, J. Ira Harris, are named as defendants. The allegations with respect to Salomon Brothers are brief and largely conclusory; the allegations with respect to Mr. Harris are non-existent. These defendants will be dismissed from the suit unless plaintiffs, within thirty days, amend their complaint to state a claim against them under the securities laws or state law. If the claim or claims stated are based solely on state law plaintiffs shall also effect service of process within that period.

■ Count III of the complaint incorporates most of the other allegations of the complaint and then alleges in conclusory terms that Salomon Brothers "conspired with the other defendants in the planning and execution" of the merger. (Complaint ¶ 29). This allegation, read alone, is insufficient to state a claim under the pleading requirements of Rule 9(b). *DuPont v. Wyly,* 61 F.R.D. 615 (D.Del.1973).

Count III goes on to allege that "it was improper and illegal for Salomon Brothers to ... give its opinion to Hall [on the fairness of the transaction when it was in] ... a position of serious and irreconcilable conflict, because of its ties to the Mobil interests and to the Pritzker interests." (Complaint ¶ 32). The plaintiffs cite nothing in their brief to support this statement and, given the fact that the "ties" to the Mobil and Pritzker interests were fully disclosed in the opinion and proxy statement, I can perceive no theory which might support a claim based upon it. Certainly, it states

no claim under the federal securities acts and the service of process on these defendants is insufficient in the absence of such a claim.

Finally, Count III alleges that the Salomon Brothers' opinion "was not complete, accurate, and objective and could not, to its knowledge have been complete, accurate, and objective." (Complaint ¶ 30). If all that is meant by this is that the firm's view of the transaction was colored by its self-interest so that "it was prejudiced in favor of the acquiring Mobil interests," this allegation adds nothing to those previously discussed. If it is an attempt to allege that Salomon Brothers issued an opinion which it knew to be false and that Hall stockholders would rely upon it, this would be an entirely different matter. It is far from clear that plaintiffs intended to allege the issuance of a deliberately misleading opinion, however, and there is nothing in the complaint which provides a clue as to what might be false or misleading about the opinion. If Salomon Brothers is to be charged with having issued an opinion constituting a device to defraud or with common law misrepresentation, it should be in unambiguous terms and the charge should indicate what rendered the opinion false or misleading.

## VII. THE CANADIAN IMPERIAL BANK DEFENDANTS

■ The Canadian Imperial Bank of Commerce (Bahamas) Limited ("Bahamas") is alleged to have been the owner of 45.2% of the Hall stock as trustee under various trusts for the benefit of the Pritzkers. Read liberally, the complaint alleges that the Canadian Imperial Bank of Commerce ("Canadian") a Canadian bank, exercises control over the actions of Bahamas, thereby sharing its fiduciary duty to Hall's minority stockholders. Bahamas and Canadian (the "Banks") have filed motions to dismiss for failure to state a claim against them and for lack of personal jurisdiction.

The Banks' motions to dismiss for failure to state a claim must be denied. The allegations of control alone are sufficient to state a claim under Section 20(a) of the

Exchange Act which renders controlling parties liable for violations of a controlled party. 15 U.S.C. § 78t(a). Both Canadian and Bahamas have filed affidavits which would support a "good faith non-inducement" defense under that Section, but these can properly be considered only after affording plaintiffs an opportunity for responding in the manner contemplated by Fed.R.Civ.P. 56.

The Banks' motions to dismiss for want of personal jurisdiction over them must also be denied. This Court has personal jurisdiction over foreigners not present in the United States in actions arising under the Securities Exchange Act to the extent permitted by the due process clause of the Fifth Amendment. *Leasco Data Processing Equipment v. Maxwell,* 468 F.2d 1326, 1340 (2d Cir.1972). Under the due process clause, if a defendant's contacts with the forum are so numerous that they reach the "minimum contacts" required by *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" *id.* at 316, 66 S.Ct. at 158, *citing Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940), then personal jurisdiction over the defendant may be asserted consistent with the due process clause. *Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 314 (2d Cir.1981), cert. denied, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982).

While it may be, as the Banks suggest, that "the mere ownership and voting of stock in a Delaware company as a trustee" is not enough to meet the "minimum contacts" requirement of *International Shoe,* when the plaintiffs' claim is based on violations of the Securities Exchange Act by a Delaware corporation, I am persuaded that the exercise of control over the offending corporation is a sufficient contact upon which to predicate jurisdiction. *Sun First Nat. Bank of Orlando v. Miller,* 77 F.R.D. 430, 440 (S.D.N.Y.1978).

## VIII. CONCLUSION

I thus have concluded: (1) that neither plaintiffs' federal claims nor their state claims are barred by limitations, (2) that the prior appraisal action in the Court of Chancery does not preclude plaintiffs from contending that they are entitled to an award of damages in this action, (3) that the derivative claim asserted on behalf of Hall against Mobil-Hall must be dismissed, (4) that plaintiffs' pursuit of their appraisal remedy does not warrant dismissal of plaintiffs' state law claims, at this stage, (5) that plaintiffs may be able to show a material misrepresentation or omission in Hall's proxy materials, (6) that the claims against Salomon Brothers and J. Ira Harris must be dismissed unless plaintiffs file a curative amendment within thirty (30) days, and (7) that the motion of the Banks to dismiss the claims against them should be denied.